DGR
F.#2018R00788

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE SILVER APPLE IPHONE, MODEL#A1633, ASSIGNED BUREAU OF ALCOHOL TOBACCO FIREARMS AND EXPOLSIVES N-FORCE NUMBER 417 CURRENTLY IN THE EASTERN DISTRICT OF NEW YORK | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE<br><br>Case No. 21-M-372 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Anthony Melchiorri, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property which is currently in law enforcement possession in the Eastern District of New York, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been since 2003. My training and experience has included investigating crimes including the trafficking of drugs and firearms, along with the laundering of proceeds generated through unlawful activity such as drug trafficking, firearms trafficking, robbery among other crimes. I have participated in numerous investigations during the course of which I have, among other things, (a) executed search warrants for electronically-stored information; (b) reviewed and analyzed communications among members of criminal groups,

including electronic messages sent over social media platforms discussing criminal activity such as drug trafficking, firearms offenses, robbery and other violent crime; (c) conducted physical surveillance; (d) obtained and analyzed location information for cellular telephones and vehicles; and (e) reviewed surveillance footage.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendants' criminal history records; and from reports of other law enforcement officers involved in the investigation.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. As set forth in this affidavit and attached exhibits, there is probable cause to believe violations of federal laws, including but not limited to narcotics trafficking and conspiracy, in violation of Title 21, United States Code, Sections 841 and 846; firearms trafficking and possession of firearms in furtherance of drug trafficking crimes and crimes of violence, in violation of Title 18, United States Code, Sections 922 and 924; and money laundering and money laundering conspiracy, in violation of Title 18, United States Code, Sections 1956 and 1957 (the "SUBJECT OFFENSES"), have been committed by DERRICK AYERS, BERMON CLARKE, NIA GOVAN, AMANDA HUARD, JESSICA PELKEY, AMY SONNENBLICK, AMANDA WALTON, DEMETTRIUS WRIGHT and others (the "SUBJECT INDIVIDUALS").[1]

---

[1]   The SUBJECT INDIVIDUALS and 41 other defendants have been charged variously in United States v. Moeleek Harrell et al., No. 20-CR-239 (S-3) (BMC) with crimes including drug trafficking, money laundering, and firearms offenses.  The case remains pending.

5.      The property to be searched is one silver Apple iPhone, Model #A1633, assigned ATF N-Force Number 417 (the "SUBJECT DEVICE").

6.      The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE described in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      On August 1, 2020, the Honorable Robert M. Levy, United States Magistrate Judge, Eastern District of New York signed a search warrant (the "August 1 Warrant"), authorizing the examination of multiple cellular device, including the SUBJECT DEVICE, which application was based on the affidavit of ATF Special Agent Kiran Mathew (the "Mathew Affidavit").[2]  A copy of the August 1 Warrant and the Mathew Affidavit are attached hereto as Exhibit 1.[3]

8.      After law enforcement began execution of the August 1 Warrant on the SUBJECT DEVICE, examiners noticed that the model number inscribed on the device ("A1633") differed by one digit from the model number listed in the search warrant ("A1533").

---

[2]     The SUBJECT DEVICE was referenced as "Subject Device #2" in the August 1 Warrant and the Mathew Affidavit.

[3]     I am aware of, and have been advised concerning, the Second Circuit's decision in United States v. Smith, 967 F.3d 198 (2d Cir. 2020).  Here, any delay in applying for the instant search warrant is immaterial because, among other things, the SUBJECT DEVICE was lawfully seized pursuant to a warrant signed by a federal magistrate judge, which warrant authorized the seizure of the SUBJECT DEVICE from a Subaru Outback used to transport narcotics.  Ex. 1 ¶¶ 14, 18(a).  The SUBJECT DEVICE itself constitutes evidence of the SUBJECT OFFENSES and there have been no requests for return of the SUBJECT DEVICE since its seizure.

3

9.  Out of an abundance of caution, this application is sought for a new search warrant for the SUBJECT DEVICE,[4] which corrects the model number listed in the search warrant and attachments.

10. Accordingly, based on the factual allegations set forth in the Mathew Affidavit as to the SUBJECT DEVICE and the SUBJECT OFFENSES, which are hereby incorporated by reference and amended by the information detailed above, I submit there is probable cause to issue the requested search warrant for the SUBJECT DEVICE.

11. The SUBJECT DEVICE is currently located in the Eastern District of New York. In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the SUBJECT DEVICE first came into the possession of the ATF.

## TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless

---

[4] Since its seizure, the SUBJECT DEVICE has remained logged as evidence by ATF under N-Force No. 417 and there have been no requests for return of the device

4

telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the

ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d. GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e. PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, and is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

    g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  13. Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow the device to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience,

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device and locations to which the user travelled.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of each device to human inspection in order to determine whether it is evidence described by the warrant.

  17. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Anthony Melchiorri
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me telephonically
on March 25, 2021:

_Cheryl L. Pollak_
THE HONORABLE CHERYL L. POLLAK
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

1. The property to be searched is one silver Apple iPhone, Model #A1633, assigned ATF N-Force Number 417 (the "SUBJECT DEVICE"), which is currently in the Eastern District of New York.

2. This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.  All records on the SUBJECT DEVICE described in Attachment A that relate to narcotics trafficking and conspiracy, in violation of Title 21, United States Code, Sections 841 and 846; firearms trafficking and possession of firearms in furtherance of drug trafficking crimes and crimes of violence, in violation of Title 18, United States Code, Sections 922 and 924; and money laundering and money laundering conspiracy, in violation of Title 18, United States Code, Sections 1956 and 1957 (the "SUBJECT OFFENSES") and involve DERRICK AYERS, BERMON CLARKE, NIA GOVAN, AMANDA HUARD, JESSICA PELKEY, AMY SONNENBLICK, AMANDA WALTON, DEMETTRIUS WRIGHT since January 2016, including:

    a.  Information concerning the purchase, sale, transfer, transportation or other disposition of narcotics and firearms or the proceeds of narcotics trafficking;

    b.  All communications, including emails, text messages, iMessages, social media messages, voicemail messages, notes, audio notes, WhatsApp messages, messages sent over any third-party applications, and web history, which relate to the SUBJECT OFFENSES;

    c.  lists of narcotics customers and related identifying information;

    d.  types, amounts, and prices of drugs or firearms trafficked as well as dates, places, and amounts of specific transactions;

    e.  any information related to sources of drugs or locations at which drugs were purchased, sold, stored, manufactured or prepared (including names, addresses, phone numbers, or any other identifying information);

    f.  information concerning any crimes of violence committed in relation to narcotics trafficking or the SUBJECT OFFENSES;

    g. any information recording travel by the SUBJECT INDIVIDUALS between New York, New Jersey, Massachusetts and Maine in furtherance of the SUBJECT OFFENSES;

    h. all bank records, checks, credit card bills, account information, and other financial records

  2. Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.